FILED
2025 Dec-12 AM 11:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

**JENNIFER STIEGLITZ,**
Plaintiff,

**v.**

**IRONMOUNTAIN SOLUTIONS, INC.,**
Defendant.

**Case No. 5:25-cv-706-CLM**

**MEMORANDUM OPINION**

Plaintiff Jennifer Stieglitz is a former employee of Defendant IronMountain Solutions, Inc., a federal government contractor. She claims that IronMountain violated the National Defense Authorization Act, 41 U.S.C. § 4712, by terminating her employment when she told her supervisors she needed personal time off to care for her mentally ill brother instead of returning to in-person work. IronMountain now moves to dismiss, arguing that Stieglitz failed to state a claim under Rule 12(b)(6) (doc. 6). For the reasons stated below, the court **GRANTS** the motion.

## BACKGROUND

Because Stieglitz is defending against a motion to dismiss, the court takes her pleaded facts as true. *Crowder v. Delta Air Lines, Inc.*, 963 F.3d 1197, 1202 (11th Cir. 2020).

### A. Factual Allegations

Stieglitz has worked for various companies as a contractor with the U.S. Army Aviation Division since 2009. Her employer has shifted several times, depending on which company at the time was "awarded the contract on which [Stieglitz] worked." (Doc. 1, p. 3). In 2019, Stieglitz

switched from the Apache Turbine Engines program to the Aviation Turbine Engines program, and her employer became Avion Solutions in Huntsville, Alabama. As an Avion Solutions employee, Stieglitz reported directly to a company supervisor and a government supervisor.

When the Covid-19 pandemic broke out in March 2020, the U.S. Department of the Army "instituted a requirement for contractors and employees to telework from their home to avoid further spread of the virus." (Doc. 1, p. 3). Stieglitz's position was included in the work-from-home directive, so she began working remotely. Around a year later, the Department of the Army instituted a "Telework/Alternative Work Environment policy" that encouraged individuals to work from home on a long-term basis. (Doc. 1, p. 4).

In February 2022, Stieglitz moved to Michigan to care for her brother, who is a "100% disabled veteran" suffering from PTSD. (Doc. 1, p. 4). Before moving, Stieglitz sought permission from her supervisor at Avion Solutions and her government supervisor to relocate and continue working remotely. Both supervisors granted Stieglitz's request.

A month later, Stieglitz learned that a previous position she held with the Apache Turbine Engines program, run by IronMountain, had opened. Stieglitz alleges that the Apache Program's company lead, Dan Kearn, and its government lead, Bob Reynolds, assured her that she could continue working remotely if she took the open position. Based on Kearn and Reynold's representations, Stieglitz applied to and was accepted for the position on the Apache Program, making IronMountain her new employer.

For almost a year, Stieglitz continued working remotely for IronMountain in Michigan. Then, on May 5, 2023, Stieglitz received an email from her supervisor, Joe Kanser, regarding her 1-year employment evaluation. Stieglitz informed Kanser that she was working remotely from Michigan, so the two agreed to conduct the evaluation remotely. But a few days later, on May 9, Kanser emailed Stieglitz telling her that working remotely from Michigan violated the "PEO Aviation Telework Agreement

and Policy" and directing her to stop working and take PTO until she returned to IronMountain's jobsite in Huntsville. (Doc. 1, p. 5). Stieglitz agreed to take PTO until she could return, and she told Kanser that she needed a week to arrange care for her brother.

The next day, Kanser and an IronMountain VP, Mike Arthur, called Stieglitz to tell her that a government contracting representative "was upset as to [Stieglitz's] working while in Michigan." (Doc. 1, p. 5). Stieglitz informed Kanser and Arthur that she was caring for her mentally ill brother, so the pair agreed to allow Stieglitz to pick a return-to-work date in Huntsville and continue taking PTO. But later that day, Kanser emailed Stieglitz again, this time telling her to return to in-person work in Huntsville by May 15. Stieglitz requested PTO until May 17 because she needed an additional two days to arrange for her brother's care. Arthur fired Stieglitz that evening.

After her firing, Stieglitz made a complaint to the Department of Defense Inspector General. On March 20, 2025, Stieglitz received notice that the DoD Inspector General's office was closing its investigation into the matter. Within 60 days of receiving that notice, Stieglitz filed this lawsuit.

### B. Stieglitz's Statutory Claim Under 41 U.S.C. § 4712 and IronMountain's Motion to Dismiss

Title 41, Section 4712 is a whistleblower statute that, in short, protects employees who work for Government contractors from retaliation after the employee discloses that someone is violating a law, rule, or regulation related to a federal contract or grant. Section 4712 states:

> An employee of a contractor, subcontractor, grantee, subgrantee, or personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a [covered person] information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross

> waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for a negotiation of a contract) or grant.

(Doc. 1, p. 7).

Stieglitz claims that IronMountain violated the statute when it fired her in retaliation for engaging in "protected activities." (Doc. 1, p. 6). Stieglitz alleges that she engaged in a protected activity when she told Kanser and Arthur (both of IronMountain) that she was caring for her mentally ill brother and needed PTO. To tie this conversation to a violation of a federal law, rule, or regulation (as § 4712 requires), Stieglitz points to Executive Order 13706. That Order permits qualifying federal government contractor employees to use earned PTO to care for "a child, a parent, … **or any other** individual related by blood or affinity whose close association with the employee is the equivalent of a family relationship" and who suffers from a "physical or **mental illness**, injury, or medical condition." 80 Fed. Reg. 54697 (Sept. 7, 2015) (emphasis added). Stieglitz contends the Order allowed her to take PTO to arrange care for her brother in Michigan. She further argues the Order constitutes "a rule or regulation related to a Federal contract" under § 4712, so IronMountain could not terminate her employment for exercising her right to take PTO.

Stieglitz seeks damages in the form of lost wages (front and back pay plus prejudgment and post-judgment interest), lost benefits, compensatory damages, and out-of-pocket expenses. Stieglitz also requests equitable relief requiring IronMountain to restore her to her previous position or an equivalent role.

IronMountain now seeks dismissal, arguing that Stieglitz has failed to state a claim under Rule 12(b)(6) (doc. 6).

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted).

This tenet, of course, is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

## DISCUSSION

Stieglitz's only claim is that IronMountain violated § 4712 by firing her when she engaged in the "protected activity" of telling her supervisors she needed PTO to care for her mentally ill brother. So the court must decide whether Stieglitz's allegations, if true, could support a § 4712 claim.

Section 4712 "adopts the legal burdens of proof from the Whistleblower Protection Act of 1989." *Wooten v. La Salle Corr.*, 748 F. Supp. 3d 1363, 1377 (M.D. Ga. 2024) (citing 41 U.S.C. § 4712(e)(6)). As a result, a plaintiff bringing a § 4712 claim must sufficiently allege that she (1) made a protected disclosure, (2) to a person specified in the statute, (3) she suffered a reprisal for making the disclosure, and (4) the disclosure was a "contributing factor" in the personnel action taken against her. *Id.*

(citing *DuPage Reg'l Off. of Educ. v. U.S. Dept. of Educ.*, 58 F.4th 326, 350 (7th Cir. 2023) (citing 5 U.S.C. § 1221(e)).

IronMountain argues that Stieglitz cannot meet any element of her claim but focuses its motion on the first element—whether Stieglitz made a "protected disclosure" within the meaning of § 4712. Essentially, IronMountain contends that all Stieglitz told her supervisors was that she could not return to in-person work by May 15, and that conversation does not count as a "protected disclosure" under a statute designed to shield whistleblowers from reprisal. The court agrees.

Under § 4712's plain language, a protected disclosure occurs when the employee produces "information that the employee reasonably believes is … a violation of law, rule, or regulation related to a Federal contract." 41 U.S.C. § 4712. A plaintiff "reasonably believes" her disclosure is protected if "a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the [plaintiff] [could] reasonably conclude that the actions evidence [protected activity.]" *Fuerst v. Hous. Auth. of City of Atlanta*, 38 F.4th 860, 873 (11th Cir. 2022) (quoting *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999)).

In her response to the motion to dismiss, Stieglitz makes clear that the "protected disclosure" she allegedly made was telling Kanser and Arthur that she couldn't return to IronMountain's Huntsville jobsite because she had to remain in Michigan to arrange care for her brother. (*See* doc. 16, p. 14). But this conversation is not "protected disclosure" because Stieglitz did not disclose to Kanser and Arthur a violation of federal law, rule, or regulation.

Realizing this, Stieglitz latches on to Executive Order 13706, which arguably allowed Stieglitz to use PTO to care for her brother. According to Stieglitz, she "informed her employer of her need to take leave under the Executive Order … [and] even though she did not explicitly mention the executive order, she was terminated for reporting of this requirement to IronMountain." (Doc. 1, p. 7-8). But proving these facts as pleaded would not prove a violation of § 4712 because Stieglitz pleads that she did

not mention Executive Order 13706 when talking to Kanser and Arthur. If Stieglitz did not *mention* Executive Order 13706 to Kanser and Arthur, then she necessarily did not disclose that IronMountain was *violating* Executive Order 13706.

As pleaded, the only "disclosure" Stieglitz made to her managers was that she needed to take PTO and couldn't return to in-person work. Simply telling your employer that you need time off does make one a whistleblower under § 4712 because the employer has yet to commit a foul. *See Fuerst,* 38 F.4th at 875 ("§ 4712 does not permit an employee to blow the whistle before the foul."). Section 4712 instead requires the employee to report a violation, then suffer repercussions. For example, Stieglitz might have a viable § 4712 claim if she requested IronMountain give her seven days PTO under Executive Order 13706; IronMountain refused; Stieglitz reported the unlawful refusal; *then* IronMountain fired her for reporting its violation. But that's not what Stieglitz pleads. She instead attempts to turn § 4712 into a vehicle to file grievances against government contractors directly in federal district court. Because Congress did not write § 4712 to allow such claims, and Stieglitz cites no authority (binding or otherwise) that suggests it did, the court must grant IronMountain's motion under Rule 12(b)(6).

## CONCLUSION

For these reasons, the court **GRANTS** IronMountain's motion to dismiss. (Doc. 6). Because Stieglitz might be able to plead a viable claim, the court **DISMISSES** Stieglitz's claim **WITHOUT PREJUDICE** and gives Stieglitz one chance to replead her claim. Should Stieglitz choose to replead, her amended complaint is due on or before **January 9, 2026**.

**DONE** and **ORDERED** on December 12, 2025.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE